IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:05cr45-MHT |
| | ) | (WO) |
| JEREMY ANTWON STEELE | ) | |

**OPINION AND ORDER TERMINATING
SUPERVISED RELEASE EARLY**

This case is before the court on defendant Jeremy Antown Steele's motion for early termination of supervised release. The supervising probation officer does not oppose Steele's motion, but the government does. For the reasons below, the court finds that the motion should be granted.


**I. Legal Standard**

"The court may, after considering the factors set forth in [18 U.S.C.] section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)--[] terminate a term of supervised release and

discharge the defendant released at any time after the expiration of one year of supervised release ... if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."[1]  18 U.S.C. § 3583(e), (e)(1) (paragraph break

---

1.   The 18 U.S.C. § 3553 factors to be considered are:

(1) § (a)(1): "the nature and circumstances of the offense and the history and characteristics of the defendant";

(2) § (a)(2)(B): deterrence;

(3) § (a)(2)(C): incapacitation;

(4) § (a)(2)(D): rehabilitation;

(5) § (a)(4): "the kinds of sentence and the sentencing range established" by the U.S. Sentencing Commission;

(6) § (a)(5): relevant U.S. Sentencing Commission policy statements;

(7) § (a)(6): "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and

2

omitted).   In ruling on a motion for early termination of supervised release, "a court must demonstrate that it has considered the [relevant] § 3553(a) factors." *See United States v. Johnson*, 877 F.3d 993, 997 (11th Cir. 2017).    The U.S. Sentencing Commission also provides a non-exhaustive list of factors courts "may wish to consider" when deciding whether to terminate a defendant's remaining term of supervised release.   *See* U.S.S.G § 5D1.4 cmt. n.1(B).[2]

---

(8) § (a)(7): "the need to provide restitution to any victims of the offense."

2.   These factors are:

"(i) any history of court-reported violations over the term of supervision;

"(ii) the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);

"(iii) the defendant's substantial compliance with all conditions of supervision;

"(iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of

3

## II. Background

In 2004, Steele committed the criminal offenses of carjacking and using and carrying a firearm during that crime of violence.  Two years later, he was convicted of those crimes and sentenced to 252 months' imprisonment followed by a five-year term of supervised release.  He was incarcerated for nearly 18 years of his 21-year sentence and was released to a Bureau of Prisons reentry facility in early November 2022.  He

---

prosocial support to remain lawful beyond the period of supervision;

"(v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and

"(vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant."  U.S.S.G § 5D1.4 cmt. n.1(B).

spent about ten months in that facility before he began his term of supervised release.  He was released early from the reentry facility due to "good conduct."  Joint Report (Doc. 157) at 2.

Steele has now finished nearly three years of his five-year term of supervised release.  Including his time at the reentry facility, he has been out of prison for three years and eight months.  Steele was 20 at the time of his offenses and is now 42.

After his release from the Bureau of Prisons, Steele obtained a Commercial Driver License and started working as a driver for a trucking company.  He has been employed in that role since March 2023.  In addition to maintaining stable employment for over three years, his supervising probation officer reports that Steele has fully complied with the conditions of his release and supervision, has maintained stable housing, has paid the $ 200 special assessment and his

5

court-ordered $ 2,400 restitution, and has constructive family and community ties.

In June 2026, Steele filed, pro se, the pending motion for early termination of his five-year term of supervised release.

### III. Discussion

As noted earlier, Steele's probation officer does not oppose his motion for early termination of supervision.  The officer explained: "Steele's conduct on supervision reflects stability, compliance, and a degree of rehabilitation.  His continued lawful employment suggests that he has developed structure and self-sufficiency. ... Steele's compliance, stability, and positive adjustment are acknowledged and commendable."  Probation Resp. to Mot. (Doc. 151) at 1-2.  The government opposes early termination because "[Steele]'s criminal conduct was extremely serious, and while his conduct on supervised release has been

6

laudable, he is only meeting the expected standard of supervised release." Gov't Resp. to Mot. (Doc. 152) at 1.

At base, the question facing the court is whether Steele needs more rehabilitation and assistance. The government is correct that Steele's 2004 crime was quite serious, and past convictions are relevant to the court's considerations regarding the risk a defendant poses in the present and his need for supervision. However, for the reasons below, the court finds that defendant Steele is no longer in need of rehabilitation and that early termination of his supervised release is, therefore, appropriate.

Supervised release "'fulfills rehabilitative ends' and 'provides individuals with postconfinement assistance.'" *Esteras v. United States*, 606 U.S. 185, 196 (2025) (quoting *United States v. Johnson*, 529 U.S. 53, 59–60 (2000)). In its recent amendment to the Sentencing Guidelines affecting supervised release, the

7

U.S. Sentencing Commission noted: "[T]erms and conditions of supervised release are imposed at original sentencing, often years before the defendant begins supervision. People and their circumstances may change in and after prison, such that the original term and conditions may no longer be appropriate after the defendant's release. Courts are encouraged to consider modifying the terms and conditions of supervised release whenever changed individual circumstances so warrant." U.S.S.G app. C, Am. 835 at 334 (2025). The court heeds the Commission's recommendation, finding that Steele and his circumstances have changed in the 20 years since he was originally sentenced to five years of supervised release. His substantial rehabilitation is clear to the court for the following reasons.

First, the court notes that Steele spent the vast majority of his adulthood in prison and has been under some form of supervision for virtually his entire adult

8

life due to the underlying offense.  Some individuals who have completed a long period of incarceration might need a relatively longer term of supervised release to help them become productive citizens;[3] Steele, however, has shown through his blemish-free and exceptional conduct under supervision that this is not the case for him.  Further, despite several infractions while incarcerated--the last of which occurred in 2021--he received "good time" credit allowing him to be released early from his sentence of incarceration.

Second, Steele has exhibited his rehabilitation by not having any infractions while at the reentry facility or while on supervised release.  At the videoconference hearing, his supervising probation

---

3. *See* U.S.S.G Ch. 5, Pt. D, intro. comment. at 405 (2025) (citing the supervised release legislative history "indicating that a 'primary goal of a term of supervised release is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense'" (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 124 (1983) (alteration adopted))).

officer stressed to the court that Steele is an example of what someone on supervised release should be doing. His spotless record in the over three years since his release from prison demonstrates, among other things, that continued supervision is not needed to "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Moreover, because he committed the offense as a young adult and is now middle-aged, the risk he poses to public safety is greatly diminished. *See* U.S.S.G app. B, § 5H1.1 ("The age-crime curve, one of the most consistent findings in criminology, demonstrates that criminal behavior tends to decrease with age."). Indeed, he is simply a different person than he was 22 years ago, when he was a youth.

Third, as noted above, Steele has maintained employment as a truck driver for over three years. In that role, he earns a substantial income--over six figures for the last two calendar years--indicating

10

that he has secured financial stability and does not require any further vocational training. *See* § 3553(a)(2)(D). Further, his supervision consists only of reporting to his probation officer because Steele does not have any remaining rehabilitative programs or requirements to complete. *See id.*

Fourth, Steele has paid all costs imposed by the court: the $ 200 special assessment and $ 2,400 in restitution. *See* § 3553(a)(7).

Fifth and finally, Steele has gotten married and has children. The probation office confirms that he "has maintained ... positive family and community ties." Probation Resp. to Mot. (Doc. 151) at 1. These ties should continue to motivate him to lead his life as a law-abiding citizen.

At bottom, Steele has followed through with the requirements of his sentence and has become a productive member of society who is no longer in need of further supervision. Thus, contrary to the

11

government's position, continuing supervision would be "'greater than necessary' to fulfill the purposes of imposing supervision." U.S.S.G. app. C, Am. 835 at 335 (2025) (quoting 18 U.S.C. § 3553(a)).   Further, the court agrees with the Commission's guidance that "[c]onsidering early termination at appropriate intervals will help ensure that resources are allocated to the individuals most in need of continued supervision." *Id.*   Therefore, the court is "satisfied that [termination] is warranted by [Steele's] conduct ... and the interest of justice."   18 U.S.C. § 3583(e)(1).

Furthermore, a statement made by the government in its brief implies that the standard for early termination is higher than it is, so the court offers a clarification.   The government noted that Steele's "conduct on supervised release has been laudable," but that it opposes termination, at least in part, because "he is only meeting the expected standard of supervised

release."    Gov't Resp. to Mot. (Doc. 152) at 1. Whether a defendant's conduct is laudable--as Steele's has been--is a factor to consider when ruling on early termination of supervised release.  So is whether a defendant exceeds the expected standards of supervised release.  However, the fact that a defendant is only meeting 'expected standards' does not foreclose terminating supervised release early if he otherwise demonstrates that he is fully rehabilitated and supervision is no longer warranted--as is the case here.

Lastly, the court gave the parties an opportunity to contact the victim in this case to see if she would like to be heard, pursuant to a U.S. Sentencing Guidelines' application note recommending courts do so. The note states: "When determining whether ... to terminate the remaining term of supervised release, the Commission *encourages* the court, in coordination with the government, to ensure that any victim of the

13

offense is reasonably, accurately, and timely notified, and provided ... with an opportunity to be reasonably heard." U.S. Sent'g Guidelines § 5D1.4, n. 2 (2025) (emphasis added). The government communicated with the victim and notified the court that she is "not interested in participating further" in this case. *See* Gov't Resp. to Court Order (Doc. 161) at 1.

***

Accordingly, it is ORDERED that defendant Jeremy Antwon Steele's motion for early termination of supervised release (Doc. 147) is granted, and he is discharged.

DONE, this the 31st day of July, 2026.

> /s/ Myron H. Thompson
> UNITED STATES DISTRICT JUDGE

14